NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1272n.06

Case No. 11-5176

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Dec 11, 2012*

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| RALPH DARDEN, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE:  BATCHELDER, Chief Judge; DAUGHTREY, and ROGERS, Circuit Judges.

**ALICE M. BATCHELDER, Chief Judge.**  Defendant-Appellant Ralph Darden was convicted of several crimes related to his possession of firearms and drugs:  being a felon in possession of two firearms in violation of 18 U.S.C. § 922(g), possessing marijuana with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1), and using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).  On appeal, he argues that his conviction should be set aside because his counsel rendered constitutionally ineffective assistance and that his sentence should be remanded for reconsideration both because he was improperly subjected to a two-tier sentencing enhancement for obstruction of justice and because the district court did not properly weigh the 18 U.S.C. § 3553(a) factors.  We reject Darden's arguments and AFFIRM his conviction and sentence.

# I

# A

On January 27, 2007, FedEx security informed Shelby County police officers that it had intercepted a package containing Ecstasy pills. The officers obtained the package from FedEx, confirmed that it contained over 900 Ecstasy pills, and then traveled to the package's intended destination: 6738 Quail Crest in Memphis, Tennessee. They intended to conduct a "knock-and-talk" investigation.

Upon arriving, the officers found Darden standing in the driveway of the residence, just behind his 2007 Chevrolet Avalanche and immediately in front of the residence's garage. During the officers' ensuing conversation with Darden, they observed a small amount of marijuana, a large amount of cash, and a pistol, all sitting in plain view in Darden's vehicle. Relying on this observation, they arrested Darden and searched him and his vehicle. They found $621 in cash on Darden's person and about $7000 in his vehicle; recovered the 3.6 grams of marijuana that was in plain sight and also discovered 106 grams of marijuana hidden in a vehicle compartment; and secured both the pistol that was in plain sight (a loaded Springfield Armory .45 caliber semi-automatic) and another one that was hidden in the back (a loaded Ruger .40 caliber semi-automatic).

The officers also obtained permission from Darden's girlfriend, Niakeka Woods, to search the residence, which she shared with Darden and other family members. Their search of the garage immediately behind Darden uncovered three bags containing over fourteen pounds of marijuana, a ziploc bag containing a single Ecstasy pill, five bags containing suspected Ecstasy residue, a small

safe containing $150 in cash and a package of rubber bands, and a loaded Glock .40 caliber semi-automatic pistol. Inside the residence they found fifty-one Ecstacy pills beside an air mattress.

After the officers read Darden his rights, he informed them that "all that stuff" recovered from the vehicle and the residence was his, that they would probably find his fingerprints on all three pistols, and that the drugs were his. The officers transported Darden to the county narcotics office, where he refused to give any further information other than that he resided at "6738 Quail Ridge," after which he invoked his Miranda rights and signed a form to indicate that he had done so.

**B**

At trial, the police officers testified to all of the facts above. The United States also called Woods as a witness, who testified that the Avalanche belonged to Darden, that all of the drugs discovered at the residence belonged to Darden, that she had seen him in possession of the three marijuana-filled bags found in the garage, and that he owned all three of the pistols. The United States further called Sandra Kay Smith, a woman who had dated Darden after his arrest. She testified that Darden told her that the marijuana and Ecstasy recovered from the residence was his. Finally, the United States submitted proof that Darden had a prior felony conviction for cocaine possession.[1]

Darden chose to testify in his own defense. As a part of his testimony, he denied that he was involved in any sort of drug-distributing operation, that the marijuana and pistols found in his car were his, and even that he had signed the Miranda form.

---

[1] The United States also provided evidence and testimony tying Darden to a drug-dealing operation that mailed Ecstasy from Texas to his residence at 6738 Quail Crest. Because that proof is immaterial to the disposition of this appeal, we do not address it here.

Unpersuaded by Darden, the jury found him guilty of being a felon in possession of the Ruger .40 caliber and the Springfield Armory .45 caliber, of possessing the marijuana with the intent to distribute it, and of carrying the Springfield Armory .45 in connection with marijuana distribution. The jury acquitted Darden of charges related to the Ecstasy and the Glock .40 caliber pistol.

Darden's Presentence Investigation Report ("PSR") assigned him a criminal history category of I and a total offense level of 26, putting his guidelines range at 128 to 138 months of imprisonment. The United States objected, arguing that Darden should get a two-level increase due to the obstruction of justice he committed by lying during his testimony. The U.S. Probation Office agreed and submitted an addendum to the PSR that adopted the United States's position.

At sentencing, the district court also agreed with the United States. While the court recognized that Darden had a right to testify on his own behalf, it concluded that this right did not permit him to commit perjury. The district court then made specific findings that Darden committed three instances of perjury, which it defined as "false statement[s] concerning a material matter that w[ere] willfully intended to provide false information and false testimony" and that were not "the result of [Darden's] confusion or misstatement." Darden's first false statement—that he did not sign the Miranda waiver—the court found to be "absolutely and transparently, completely, unequivocally . . . false," intentionally made to deceive, and, because it would have "greatly imperil[ed] the government's case" if the jury believed the police officers had forged Darden's signature, very material.

Darden's second false statement was that he was not involved with any drug dealing at all, which the court found "clearly" untrue because the jury had convicted him of possessing marijuana

with intent to distribute it. And because Darden's testimony was "made for the purpose of convincing a jury that he didn't commit the crime" that he was charged with committing, the court had no trouble concluding that this lie was both intentional and material.

Finally, the district court found false Darden's blanket denial that he owned the guns and marijuana discovered in his car. Again, the district court easily found that these statements were material, and that they were intentionally made to dupe the jury into believing he did not commit the crime he was charged with committing.

For each of the perjury findings, the district court identified Darden's precise statement from the trial transcript, compared it to the trial record, and found the statement perjurious. Based on those findings, the district court concluded that Darden should receive the two-point sentencing enhancement for obstruction of justice. This enhancement raised his total offense level to 28 and his guidelines range to 138 to 157 months.

After the court made the enhancement determination, Darden conceded that he must receive a minimum of 81 months imprisonment just for mixing guns and drug distribution, without taking into account other aspects of his offenses. He requested that the district court sentence him to "something between 81 [months] and [the lower end of the guidelines range, 138 months]." To support this request for leniency, Darden emphasized his steady work history, that he had committed his prior felony twenty-two years ago, that he had stayed off drugs during pre-trial release, and that the jury had acquitted him of several charges. Darden called a pastor to testify on his behalf and had several family members, friends, and neighbors present on his behalf.

The district court walked through the 18 U.S.C. § 3553 factors, discussing each of the crimes of conviction and their seriousness; Darden's characteristics and circumstances (including each of the factors Darden brought up in mitigation, as well as Darden's mental health issues, finances, and educational background); the need for the sentence to serve the goals of proportionality, deterrence, and protection for the public; and the importance of rehabilitation. The district court indicated that it would prefer to give Darden a lower sentence, but that his use of firearms during drug offenses and perjury during the trial made that "really hard." Nonetheless, the court sentenced Darden to a term of 120 months' imprisonment, a year and a half below the bottom of the guidelines range.

## II

Darden makes three arguments on appeal: first, that his counsel was constitutionally ineffective because he failed to challenge the admission of Darden's statements at his arrest; second, that the district court should not have granted the obstruction of justice enhancement; and third, that his sentence is substantively unreasonable. We take, and reject, each in turn.

## A

Darden raises his ineffective assistance of counsel claim on direct appeal. Generally, we will not review claims of ineffective assistance on direct appeal. *United States v. Crosgrove*, 637 F.3d 646, 663 (6th Cir. 2011). An exception exists where the defendant shows that record is sufficiently developed to support the claim. *Id*. But Darden provides no "substantive argument concerning why the record here is sufficiently developed for us to rule on his ineffective-assistance claim on direct review." *United States v. Williams*, 612 F.3d 500, 508-09 (6th Cir. 2010). Rather, he only briefly argues that his comments at the time of arrest were so harmful that not attempting to suppress their

6

introduction into evidence proves that his counsel was ineffective. This is not only insufficient, it tells us nothing of what we need to know to decide an ineffective assistance claim, such as the nature of his trial counsel's preparation or strategy. Accordingly, we conclude that his claim is premature and must be raised, if at all, in a post-conviction proceeding. *See id.*

**B**

Darden's next argument concerns his two-point sentencing enhancement for obstructing justice. To review such an enhancement, this Court often employs a three-pronged standard. "First, we review the factual determinations made by the district court for clear error. Second, the determination that certain conduct constitutes obstruction of justice, which is a mixed question of law and fact, is reviewed de novo. Third . . . the actual imposition of the enhancement is reviewed de novo." *United States v. Boring*, 557 F.3d 707, 712 (6th Cir. 2009) (quoting *United States v. Baggett*, 342 F.3d 536, 540-41 (6th Cir. 2003)).[2]

To impose an obstruction of justice enhancement based on perjury, the district court "must 1) identify those particular portions of the defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury." *Id.* (quoting *United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002)). Perjury is "false testimony concerning a material

---

[2]There appears to be some confusion in this Circuit on the standard of review. Some cases, such as *United States v. Kelley*, 459 F. App'x 527, 533 (6th Cir. 2012), have followed the standard of review set out in *United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002), which reviews the entirety of the obstruction decision for clear error. Others, such as *United States v. Gauna*, No. 10-6193, 2012 WL 2217051, at *6 (6th Cir. June 18, 2012), have applied the three-part standard stated in *Boring*. Because the parties agree on the *Boring* standard and because the conflict is irrelevant to the disposition of this case, we do not address the matter further here.

matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). If the false testimony "would tend to influence or affect the issue under determination," then it is material. *Id.* (quoting U.S.S.G. § 3C1.1 cmt. n.6).

Under that standard, the district court's factual findings were not clearly erroneous and its legal conclusions were correct. The district court specifically identified three statements Darden made under oath that were plainly false, found that the statements had been made with the intent to deceive and were not the product of confusion or mistake, and persuasively explained how they were material to the case. We find no error in the district court's careful analysis and disposition.

## C

Darden's final argument is that his sentence is substantively unreasonable because the district court did not adequately weigh three mitigation factors (Darden's lack of a recent criminal history, his recent stable employment, and his acquittal on the charges related to the Ecstasy and the Glock .40 caliber pistol) while overemphasizing two aggravating factors (Darden's possession of the .45 caliber and the "unsupported conclusion" that Darden committed perjury). This argument has no basis in the record. The district court not only considered all of the mitigating factors that Darden identifies, it considered other mitigating factors as well. And the district court did not overemphasize Darden's possession of the .45, but rather treated it as a serious, but not sole, consideration. Finally, as noted above, the district court's perjury findings were both amply supported and correct.

Our review of the substantive reasonableness of sentencing decisions is only to determine whether the district court abused its discretion, *see Gall v. United States*, 552 U.S. 38, 46, 49 (2007), such as by arbitrarily choosing a sentence or giving short shrift to the § 3553 factors. *See United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009). We find no evidence that the district court abused its discretion here. And it bears noting that Darden received what he asked for: a below-guidelines sentence between 81 and 137 months. That further dispels any basis for complaining that his sentence was unreasonable. *See, e.g.*, *United States v. Sorrell*, 365 F. App'x 672, 674-75 (6th Cir. 2010) (noting that receiving the sentence one requests can support a finding of reasonableness).

### III

For the foregoing reasons, we **AFFIRM** the district court's judgment.