NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0023n.06

Case No. 24-3580

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 13, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO AT CLEVELAND |
| v. | ) ) ) | |
| TRENT A. CAREY, | ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: SILER, KETHLEDGE, and MATHIS, Circuit Judges.

**SILER, Circuit Judge.** Defendant Trent Carey appeals the district court's denial of his motion to withdraw his guilty plea. Because the district court did not abuse its discretion in denying Carey's motion, we **AFFIRM**.

**I.      Background**

On January 4, 2024, Carey pled guilty to five charges: possession of a firearm and ammunition as a felon (Count 1), possession with intent to distribute various drugs (Counts 2–4), and possession of a firearm in furtherance of a drug offense (Count 5). During his guilty plea hearing, Carey told the court that he was of sound and sober mind. Carey next affirmed that he had discussed his plea decision with his trial counsel and that his decision was voluntary. The district court then explained Carey's trial rights and the consequences of pleading guilty, including that "[i]f I accept your guilty plea today, . . . we'll come back in a few months for sentencing and

you won't be able to say, 'Gee, I made a mistake, I want a trial.'" Carey responded by acknowledging his understanding, "Yes, Your Honor."

At the same hearing, the government recited its trial evidence. In response, Carey contended that "I possessed those things. . . . [B]ut it wasn't with intent to distribute[.]" When the district court clarified that "distribute" "just means transfer to someone else[,]" however, Carey conceded his guilt: "All right, yeah. I admit to it."

On April 11, 2024, at a sentencing hearing, Carey's trial counsel confessed that he had not reviewed the presentence report with Carey. Consequently, the court explained that it could not sentence Carey. Trial counsel then informed the district court that he had been struggling with an ongoing "medical situation." Trial counsel additionally represented that he planned to take medical leave after Carey's case.

Upon hearing about his counsel's health, Carey stated, "I need a new lawyer. We've been having issues this whole case." But the district court informed Carey, "[Y]ou're going to be sentenced, all right? You've entered a guilty plea." Carey next asked whether he could "withdraw [his] plea" on grounds of "[i]nsufficient counsel." The district court replied, "Well, sir, I took your plea, all right? I had a discussion with you. I'm satisfied you knew what you were doing. So that's denied." The district court granted Carey "another lawyer for purposes of sentencing only."

After Carey's pro se motions, his trial counsel suggested that, just before the plea hearing, he had expected that Carey would proceed to trial:

> When we came in here, my expectation was that he wasn't – we wanted to go forward at trial. . . . [A]t that time, he decided to enter a plea even though we weren't a hundred percent sure where we were going to be. . . . But coming into it, I fully expected that we were going to get a trial date and prepare for trial at that time.

Based on the plea colloquy, however, the district court reaffirmed its belief that Carey's plea was "knowing and voluntary[.]"

At sentencing, Carey confirmed that he had reviewed the presentence report with his new counsel. Carey's new counsel stated that "the weapon was never ever used by Carey." But the sentencing memorandum filed by Carey's new counsel noted that Carey had "admitted to his involvement."

Following his new counsel's sentencing arguments, Carey spoke on his own behalf. Carey began by stating, "I accept responsibility." Nevertheless, Carey stated that his firearm possession "was for recreational purposes only." Carey admitted that the drugs "were also mine."

On June 13, 2024, the district court entered its judgment, sentencing Carey to a total of 97 months' imprisonment. Carey's appeal followed.

## II.    Standard of Review

We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Goddard*, 638 F.3d 490, 493 (6th Cir. 2011). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard." *Id*. (quotations omitted).

## III.    Analysis

### A.    Waiver

On appeal, Carey offers two arguments: (1) that the district court should have held a hearing on his motion to withdraw the guilty plea and (2) that the *Bashara*[1] factors weigh in his favor. As a preliminary matter, however, we first address the government's argument that Carey waived review of his withdrawal motion. We find that the government has not established waiver.

---

[1] *United States v. Bashara*, 27 F.3d 1174 (6th Cir. 1994).

3

In the criminal context, to preserve an issue for appeal, "[a] party [shall inform] the court—when the court ruling or order is made or sought—of the action the party wishes the court to take." Fed. R. Crim. P. 51(b). By contrast, a party waives an issue when he "intentional[ly] relinquish[es] or abandon[s]" a "known right." *United States v. Carter*, 89 F.4th 565, 568 (6th Cir. 2023) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Once a party waives an issue, "that [claim] is forever foreclosed and cannot be resurrected on . . . appeal." *United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir. 2000).

After Carey orally raised his motion to withdraw the guilty plea, the district court quickly denied the motion, but it granted Carey's motion for new counsel. The district court specified that Carey's new attorney would serve him for "sentencing only." Although Carey did little to preserve his guilty plea withdrawal claim, little was required. Indeed, Carey preserved the issue by orally raising the motion and "informing the court . . . of the action [he] wishe[d] the court to take." Fed. R. Crim. P. 51(b); *see also United States v. Brown*, 819 F.3d 800, 822–26 (6th Cir. 2016) (finding that the pro se defendant's oral objection to an alleged Speedy Trial Act violation preserved the issue).

To establish waiver, however, the government relies on *United States v. Hoff*, 767 F. App'x 614 (6th Cir. 2019), and *United States v. Smith*, 608 F. App'x 395 (6th Cir. 2015) (per curiam). Both *Hoff* and *Smith* hold that, to preserve the issue for appeal, a defendant must renew the motion to withdraw the guilty plea when the district court encourages renewing the motion. *Hoff*, 767 F. App'x. at 629; *Smith*, 608 F. App'x at 396. But the district court here did not invite Carey to file a renewed motion. Carey, therefore, did not waive review of the district court's order denying his motion to withdraw the guilty plea.

4

**B.     Lack of a Full Hearing**

Next, we address Carey's argument that the district court abused its discretion by not holding a full hearing on his motion to withdraw the guilty plea. Carey has not established an abuse of discretion on this issue.

For a motion to withdraw the guilty plea, it is "strongly prefer[red]" that district courts "state their reasons" for the disposition of the motion and avoid making "marginal entries." *United States v. Alexander*, 948 F.2d 1002, 1003 (6th Cir. 1991) (per curiam). Moreover, when the motion to withdraw the plea is raised pro se and orally, "a district court should inquire more thoroughly of the defendant whether he has a fair and just reason for seeking to withdraw the guilty plea and should offer him the opportunity to confer with counsel." *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012). But when "the face of the record" shows that the motion is meritless, a district court's summary denial will not constitute an abuse of discretion. *See Alexander*, 948 F.2d at 1003.

Here, though the district court quickly denied Carey's motion with little analysis, the record allows for a straightforward review on the merits. Furthermore, the record shows that the *Bashara* factors weigh heavily against granting Carey's motion. To be sure, Carey's delay in moving to withdraw the plea, purported reason for the delay, thorough plea hearing, social background, experience with the criminal justice system, and admissions of guilt all suggest that his motion should not be granted. Therefore, the district court did not abuse its discretion by denying his motion without holding a full hearing.

Arguing otherwise, Carey highlights *United States v. Troutman*, No. 23-3209, 2023 WL 8283115 (6th Cir. Nov. 30, 2023). In *Troutman*, the appellate court remanded the defendant's motion to withdraw the plea because the district court incorrectly held that the motion to withdraw was identical to a previous motion. *Id.* at *5. The *Troutman* court also suggested that remand

made sense as a matter of judicial economy—the court had already remanded a related motion. *Id.* Here, in contrast to *Troutman*, the district court did not misconstrue Carey's motion, and judicial economy does not weigh in favor of a remand. So, *Troutman* does not establish an abuse of discretion.

## C. *Bashara* Factors

Turning to his primary claim, Carey contends that the district court abused its discretion in denying his motion because the *Bashara* factors weigh in his favor. Again, Carey has not established an abuse of discretion.

A criminal defendant may withdraw his guilty plea before sentencing when he "can show a fair and just reason for requesting the withdrawal."[2] Fed. R. Crim. P. 11(d)(2)(B). The goal of the rule is "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Alexander*, 948 F.2d at 1004 (quotations omitted). Thus, "it is well settled that the movant has the burden of establishing that his presentence motion to withdraw his plea should be granted." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987). In deciding whether such a motion should be granted, we consider seven factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the

---

[2] Carey relies on other circuits to argue that determining whether a defendant has offered a "fair and just" reason for withdrawing a plea is a liberal standard. But, suggesting a stricter standard, controlling authority states that when a defendant admits his guilt and enters a knowing and voluntary plea, "the occasion for setting aside a guilty plea should seldom arise." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (quoting *United States v. Morrison,* 967 F.2d 264, 268 (8th Cir.1992)) (internal quotations omitted).

defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Goddard*, 638 F.3d at 494 (quoting *Bashara*, 27 F.3d at 1181). These factors are a non-exclusive list, and no one factor is controlling. *Id.* (citing *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996)).

### 1.  Length of Delay

The time between Carey's guilty plea and his motion to withdraw the plea was substantial—98 days in total. And this court has found that much shorter delays weigh against granting plea withdrawal motions. *See United States v. Benton,* 639 F.3d 723, 727 (6th Cir. 2011) ("This Court has declined to allow plea withdrawal when intervening time periods were as brief as one month."); *see also United States v. Graham*, 278 F. App'x 538, 547 (6th Cir. 2008) (collecting cases). Therefore, this factor weighs heavily against granting the motion.

### 2.  Reason for Delay

To account for his delay, Carey argues that his counsel gave him bad advice—namely, that he could withdraw his plea at any time and proceed to trial. In turn, Carey claims that he quickly attempted to withdraw his plea once he realized his misconception.

Supporting his argument, Carey specifically relies on a few statements by his trial counsel. For context, the relevant statements followed Carey's motion to withdraw the plea. (***Id.***) And the statements reveal that, just before the plea hearing, trial counsel had anticipated that Carey would proceed to trial:

> When we came in here, my expectation was that he wasn't – we wanted to go forward at trial. . . . [A]t that time, he decided to enter a plea even though we weren't a hundred percent sure where we were going to be. . . . But coming into it, I fully expected that we were going to get a trial date and prepare for trial at that time.

7

In short, trial counsel was trying to resurrect Carey's motion by emphasizing Carey's uncertainty when he pled guilty. These statements do not show that trial counsel falsely advised Carey that he could easily withdraw his guilty plea.

Regardless, even if trial counsel had misled Carey, the district court dispelled any such misconception during the guilty plea hearing: "If I accept your guilty plea today, . . . we'll come back in a few months for sentencing and you won't be able to say, 'Gee, I made a mistake, I want a trial.'" Therefore, this factor weighs against Carey's motion.

### 3. Asserted or Maintained Innocence

During his plea hearing, Carey initially contested that he had distributed drugs. But, upon further clarification, Carey acknowledged his guilt: "All right, yeah. I admit to it." Later, when Carey received new counsel, he submitted his own presentence memorandum, which noted that Carey had "admitted to his involvement[]" in the crimes.

Despite these admissions, Carey argues that he has maintained his innocence, emphasizing his statement during sentencing that his firearm possession was "for recreational purposes only." On the contrary, this belated contention of partial innocence does not show that Carey "consistently and vigorously maintained his innocence." *United States v. Dixon*, 479 F.3d 431, 437 (6th Cir. 2007). So, this factor weighs against Carey.

### 4. Circumstances Underlying Plea

At Carey's plea hearing, the district court thoroughly discussed Carey's trial rights and other issues to ensure that his plea was knowing and voluntary. Most relevant, the district court told Carey that "[i]f I accept your guilty plea today, . . . we'll come back in a few months for sentencing and you won't be able to say, 'Gee, I made a mistake, I want a trial.'"

8

Given the thorough colloquy, the record shows that Carey's plea was knowing and voluntary. And the district court's explanation that Carey could not easily withdraw his plea dispelled any potential false beliefs about withdrawal. *See United States v. Lee*, No. 23-5584, 2024 WL 991870, at *3 (6th Cir. Mar. 7, 2024), *cert. denied*, 145 S. Ct. 231 (2024) ("A proper plea colloquy generally cures any misunderstandings a defendant may have regarding the implications of his plea.").

### 5. Carey's Nature and Background

According to the presentence report, Carey suffered a challenging family life. And although Carey is a high school dropout, he eventually obtained his GED. Ultimately, this factor weighs slightly against granting the motion to withdraw the plea. *See United States v. Willis*, No. 23-3619, 2024 WL 5156301, at *5 (6th Cir. Dec. 18, 2024) (weighing high school-equivalent education and competency finding against the defendant).

### 6. Carey's Prior Criminal Justice Experience

Carey has a substantial criminal history, which ordinarily weighs against granting a motion to withdraw the guilty plea. *See United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007). Nonetheless, Carey argues that he was confused about his ability to withdraw his plea due to his experience in Ohio state court, where guilty pleas are easily withdrawn. Though theoretically possible, Carey's argument again fails to account for the district court's statement to Carey during the plea hearing that he could not easily withdraw his plea. So, this factor weighs against granting the motion.

9

### 7. Potential Prejudice to the Government

Because no factor weighs in Carey's favor, the potential prejudice to the government is irrelevant.[3] *United States v. Ellis*, 470 F.3d 275, 285–86 (6th Cir. 2006).

## IV.    Conclusion

For the above reasons, we AFFIRM the judgment of the district court.

---

[3] Carey separately urges that he was prejudiced by the district court's denial of his motion to withdraw the plea because "he could have accepted the prior [plea] agreement[.]"  But nothing in the record suggests that the government's original plea offer was still available or that withdrawal would have otherwise benefited Carey.